United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LUCIA LUONG, ET AL.,**<br>Plaintiffs,<br>vs.<br>**SUBARU OF AMERICA, INC.,**<br>Defendant. | CASE NO. 17-cv-03160-YGR<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 28, 42 |

Plaintiffs Lucia Luong and Brian Mann bring this putative consumer class action against defendant Subaru of America, Inc. ("Subaru") alleging claims for: (1) violation of California Consumers Legal Remedies Act (Cal. Civ. Code § 1750); (2) violation of California Unfair Competition Law (Cal. Bus. & Prof. Code 17200); (3) breach of implied warranty pursuant to California Song-Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1792 and 1791.1, et seq.) and Cal. Comm. Code § 2314; (4) Breach of Express Warranty (Cal. Com. Code § 2313); (5) violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, et seq.).; and (6) fraudulent omission. The original complaint was filed June 1, 2017. Subaru moved to dismiss and plaintiffs elected to file a First Amended Complaint on September 8, 2017. (Dkt. No. 27 ["FAC"].) Subaru moves to dismiss the FAC pursuant to Rules 9(b), 12(b)(1), 12(b)(6), and 12(f), on the grounds that plaintiffs lack standing to bring certain claims, that claims sounding in fraud are not stated with sufficient particularity, and that certain forms of relief are not available for the claims alleged. (Dkt. No. 28.)

Having carefully considered the papers submitted in support of[1] and in opposition to the motion,[2] and the pleadings in this action, and for the reasons set forth below, the Court **DENIES** the motion to dismiss.

## I. BACKGROUND

Plaintiffs bring this action on behalf of themselves and all persons who purchased or leased any 2015 through 2016 Subaru Outback or Legacy vehicles in the State of California ("Class Vehicles"). (FAC ¶ 49.) They allege that the Class Vehicles suffer from one or more design and/or manufacturing defects that can cause the windshield to crack, chip, and/or fracture ("Windshield Defect"). (*Id.* ¶ 2.) Plaintiffs allege that scores of Class Vehicle owners reported their windshields cracking for no reason at all, and many others reported windshield failure as the result of circumstances that would not cause a non-defective windshield to crack, such as a very slight impact. (*Id.* ¶ 3.) They contend that the Windshield Defect constitutes an unreasonable safety hazard which was known to Subaru, and that Subaru failed to disclose the defect to class members despite having a duty to do so.

Plaintiffs support these allegations with consumer complaints, including complaints to the National Highway Traffic Safety Administration ("NHTSA"). (*Id*. ¶ 38.) Plaintiffs allege that, as early as 2014, Subaru was aware of the Windshield Defect through sources including pre-production testing, pre-production design failure mode and analysis data, production design failure

---

[1] With respect to Subaru's reply (Dkt. No. 38), the Court finds Subaru's use of footnotes therein to be an apparent attempt to circumvent the Local Rules, which provide that a reply brief may not exceed 15 pages of text, in 12 point font. *See* Civ. L.R. 7-3(c); Civ. L. R. 3-4(c)(2). Ten of the 15 pages in Subaru's reply include footnotes of reduced font size. Far from constituting a mere "footnote," *i.e.*, an "aside, caveat, or afterthought" (see Black's Law Dictionary (10th ed. 2000) definition), the material in the footnotes here include extensive argument and citations. Subaru is cautioned that if this practice is repeated, its briefs may be stricken or monetary sanctions ordered.

[2] Plaintiffs submitted a request to file a sur-reply (Dkt. No. 42), to which defendant filed a substantive opposition. Because defendant raised new arguments on reply, the request is **GRANTED**, and the Court has considered both the sur-reply and the opposition thereto in reaching the decision herein.

The Court **DENIES** Subaru's request for judicial notice. (Dkt No. 29.) The contents of those documents are offered for matters not properly the subject of judicial notice, and are not relevant to the issues raised in the motion.

mode and analysis data, early consumer complaints made exclusively to Subaru's network of dealers and directly to Subaru, aggregate warranty data compiled from Subaru's network of dealers, testing conducted by Subaru in response to consumer complaints, and repair order and parts data received by Subaru from Subaru's network of dealers. (*Id*. ¶¶ 33-37.) In the summer of 2015, Subaru made a production change to introduce an allegedly "enhanced" windshield. (*Id*. ¶ 25 and n.2.)

Plaintiffs allege that, in October of 2015, Subaru admitted the existence of a defect but, in doing so, fraudulently misrepresented the nature and scope of the actual Windshield Defect. Subaru purported to extend the original New Vehicle Limited Warranty ("NVLW") of three (3) years/36,000 miles to five (5) years/unlimited miles for front windshield failure pursuant to a Technical Service Bulletin ("TSB"). (*Id*. ¶ 25.) However the warranty extension was limited to vehicles with a windshield deicer feature that had damage to the lower deicer area of the windshield. (*Id*.) Plaintiffs allege that Subaru denied their and others' valid warranty claims, and when Subaru replaced defective windshields, it merely replaced them with similarly defective windshields. (*Id*. ¶ 3.)

Plaintiff Luong purchased a new 2015 Subaru Outback in February of 2015. In March of 2017, within the period of her vehicle's three year/36,000 mile warranty period, Luong noticed a crack that had appeared spontaneously on her windshield from the center base upward. At no time prior to noticing this crack did Luong witness the windshield sustain an impact. Luong had her vehicle inspected by a local Subaru dealer and was denied warranty coverage. (*Id*. ¶ 12.)

Plaintiff Mann purchased a new Subaru Outback in April of 2016. His vehicle post-dates the VIN range included in Subaru's warranty extension program, and thus was equipped with an "enhanced" windshield. In February of 2017, within the period of his warranty, Mann was driving and noticed a small crack on the lower right passenger side of his windshield about four to five inches above the bottom portion of the windshield. He did not see anything impact the windshield. Within ten minutes of driving a foot-long crack had formed; within 24 hours the crack grew to approximately two feet. Mann had his vehicle inspected by a local Subaru dealer and was denied warranty coverage, so he had a new windshield installed and paid out-of-pocket.

(*Id*. at ¶¶ 14-15.)

Although some putative class members received notice of the defect and warranty extension, thousands of others did not, including plaintiff Luong. (*Id.* ¶ 26.) Plaintiffs further contend that the warranty extension notice was inadequate because the entire windshield is defective, as is the "enhanced" windshield in the later-manufactured Class Vehicles. (*Id*. at ¶¶ 28, 31.) The "enhanced" windshields have also been the subject of numerous consumer complaints. (*Id*. at ¶ 31.) Plaintiffs further allege that Subaru's dealers are engaged in systematic denial of valid coverage claims under the extended warranty, orchestrated by Subaru to minimize the cost of warranty claims. (*Id*. at ¶ 30.) Plaintiffs allege that, in addition to dangers arising from a cracked or shattered windshield in terms of obstructing the view or distracting the driver, the windshield is an important part of the vehicle's safety restraint system, and includes supports for airbag deployment and structural integrity in case of an accident. (*Id*. at ¶¶ 4-6.)

## II. APPLICABLE STANDARDS

### A. Motion to Dismiss Under FRCP 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the Court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004). A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint fails to allege facts sufficient to establish subject matter jurisdiction, or if any evidence offered, such as affidavits and testimony, establish lack of jurisdiction. *Id.* The Court may consider evidence outside the complaint, and resolve factual disputes, in determining the existence of subject matter jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988). Further, the existence of disputed material facts will not preclude a trial court from evaluating for itself the merits of jurisdictional claims, except where the jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733-35 (9th Cir. 1979)). Plaintiffs invoke this Court's jurisdiction and consequently bear the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511

U.S. 375, 376-78 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir.2010).

### B. Motion to Dismiss Under FRCP 12(b)(6)

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). In ruling on a motion to dismiss, "the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain,* 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79.

Additionally, claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b).

### C. Motion to Strike Under FRCP 12(f)

Rule 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money

5

that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Motions to strike are generally disfavored and are not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation. *See Colaprico v. Sun Microsystem, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)); *LeDuc v. Kentucky Cent. Life Ins. Co.,* 814 F. Supp. 820, 830 (N.D. Cal. 1992). Consequently, when a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec Lit.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2010). A motion to strike should be denied if there is any doubt whether the allegations in the pleadings might be relevant in the action. In deciding whether to grant a motion to strike under Rule 12(f), the court must start with the rule's plain language and determine whether the matter at issue is an insufficient defense, redundant, immaterial, impertinent, or scandalous. *Id.* at 973-74.

### III. DISCUSSION

#### A. Article III and UCL Standing

Subaru first argues that plaintiffs lack standing to assert certain claims concerning replacement windshields. Subaru contends that plaintiffs lack standing under Article III of the United States Constitution, as well as under state law, because they cannot allege they have been injured by Subaru replacement windshields. Article III standing requires that a plaintiff suffer "injury in fact" that is fairly traceable to the defendant's actions, and that a favorable decision will likely redress. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Subaru argues that neither plaintiff has standing to complain about replacement windshields. Luong never had a replacement windshield installed (and refused Subaru's offer to replace her windshield after this litigation was filed). It further argues that Mann's replacement windshield is not alleged to be a Subaru-manufactured windshield.

Subaru's standing argument misapprehends the nature of the claim here, artificially separating plaintiffs' claims into complaints about original windshields and replacement windshields. Plaintiffs' claims make no such distinction. Both plaintiffs allege that the

windshields *original* to their Subaru vehicles, though manufactured at different times, were equally defective. Luong's windshield was within the VIN range of those covered by Subaru's warranty extension, while Mann's was not. Mann's original windshield was the "enhanced" windshield that plaintiffs allege Subaru was using to replace windshields under its extended warranty program. Both Luong and Mann were denied warranty coverage for replacement of their windshields—Mann had his replaced elsewhere and paid out of pocket for a repair.[3] Both plaintiffs allege that the value of their vehicles was affected as a result of their defective original windshields. These allegations are sufficient to allege injury in fact for purposes of Article III and the UCL. *See In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1166 (C.D. Cal. 2011) ("economic loss injury flows from the plausibly alleged defect at the pleadings stage"); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (economic injury for purposes of UCL shown where plaintiffs "(1) surrender in a transaction more, or acquire in a transaction less, than [they] otherwise would have; (2) have a present or future property interest diminished; (3) [are] deprived of money or property to which [they have] a cognizable claim; or (4) [are] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.").[4]

## B. Fraud-Based Claims

Plaintiffs allege claims under the CLRA, UCL, and common law (Claims 1, 2 and 6) based upon allegations that Subaru made fraudulent omissions concerning the Windshield Defect. To state an actionable for fraudulent omissions, the alleged "omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged

---

[3] Subaru's offer to replace Luong's windshield after this action was filed—and her refusal to accept that offer—does not moot her claim or otherwise establish that she has suffered no injury in fact for purposes of standing. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016), *as revised* (Feb. 9, 2016) (an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1148 (9th Cir. 2016) ("'offers to provide full relief to the representative plaintiffs who wish to pursue a class action must be treated specially, lest defendants find an easy way to defeat class relief.'").

[4] Subaru's argument that plaintiffs, as Subaru Legacy owners, cannot represent a class including Subaru Outback owners, is one most appropriately addressed in the context of class certification, based upon a sufficient factual record.

to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (concerning CLRA and UCL claims). Facts that a defendant is under an obligation to disclose include safety-related defects. *Id.* at 835-38; *see also Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010), *aff'd,* 462 F. App'x 660 (9th Cir. 2011) ("for the omission to be material, the failure must pose 'safety concerns,'" citing cases); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 940 (C.D. Cal. 2012) (same).

Here, plaintiffs allege that Subaru concealed defects in its windshields, which they contend was material information that Subaru had a duty to disclose to plaintiffs and other class members. Plaintiffs allege that Subaru sold vehicles with windshields it knew were defective; instituted a sham warranty extension to limited the scope of coverage and deny valid claims; and purported to cure the defect with an "enhanced" windshield that it knew was similarly defective. (FAC ¶¶ 3, 8, 14, 15, 25, 30, 31.) The FAC alleges that Subaru's warranty extension letter falsely stated that the Windshield Defect was limited to the lower deicer area of the windshield and that damage to other areas did not result from a defect, even though Subaru knew the true nature and extent of the defect was much greater. (*Id.* ¶¶ 3, 8, 28, 29.)[5] Plaintiffs have alleged that the Windshield Defect "poses an extreme safety hazard to drivers, passengers, and pedestrians" due to the risk of shattering or cracking, as well as the compromise of the vehicle's safety restraint system and structural integrity in the event of an roll-over. (*Id.* ¶¶ 4-6, 24, 41.) These allegations are sufficient to state claims based upon fraudulent omissions.

Subaru argues that plaintiffs' fraud-based claims must be dismissed because plaintiffs have not alleged Subaru's knowledge of the asserted defect with sufficient specificity. California federal courts have held that, under the UCL and the CLRA, "plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (noting cases finding allegations of

---

[5] Subaru argues that it cannot be liable for fraudulent omissions because it provided notice of the windshield deicer condition in public announcements, and extended the warranty for windshields damaged by that condition. Subaru's arguments ignore plaintiffs' allegations that the Windshield Defect affected the *entire* windshield, including the "enhanced" windshields offered as a replacement under the extended warranty program. (FAC ¶¶ 28, 31.)

8

high levels of consumer complaints to federal agencies or to the manufacturer were sufficient to allege knowledge). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake, [but] [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). For purposes of Rule 9(b), Subaru's knowledge need only be alleged generally, with non-conclusory, plausible allegations.

The FAC alleges specific facts, including prior testing, analysis, and consumer complaints, which support the allegation that Subaru had knowledge of the falsity of its representations that the Windshield Defect existed and was not limited to the deicer portion of the windshield. (FAC ¶¶ 8, 9, 10, 31, 33-38.) Plaintiffs allege that Subaru had knowledge of the Windshield Defect prior to plaintiffs' alleged purchases. (*See id.* ¶¶ 37, 38 [alleging knowledge as early as 2014, federal safety complaints dating back to January 2015].) Further, plaintiffs allege that Subaru acknowledged *some* windshield defect (although not the full scope of the Windshield Defect alleged here), when it issued a TSB and extended warranty program in October 2015. *See Falco v. Nissan North America, Inc.*, 2013 WL 5575065, \*6 (C.D. Cal. Oct.10, 2013) (holding a service bulletin issued in 2007 and post-sale customer complaints together gave rise to plausible inference of knowledge in 2005); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014) ("That Ford is able to identify competing inferences from the same set of facts [regarding TSBs regarding similar defects in different models] does not mean that Plaintiffs' claims should be dismissed"); *Ho v. Toyota Motor Corp.*, 931 F.Supp.2d 987, 990, 998 (N.D. Cal. 2013) (knowledge evidenced by service bulletins authorizing "temporary fixes" that did not fix defect). Unlike the cases cited by Subaru, plaintiffs here have alleged sufficient dates and details of the consumer complaints to state to support their allegations that Subaru had knowledge of the Windshield Defect. *Cf. Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146–47 (9th Cir. 2012) (allegations that defendant was "familiar with" and "on notice" of unspecified defects insufficient to allege knowledge); *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at \*5 (N.D. Cal. June 16, 2010) ("a series of anecdotal complaints, without any dates or any other information" insufficient). The allegations regarding Subaru's knowledge here are sufficiently

9

pleaded.

### C. Other Arguments Regarding CLRA Claim

Subaru argues that the CLRA claim should be dismissed for a variety of other reasons. First, Subaru argues that the injunctive relief claim under the CLRA requires an allegation that plaintiffs intend to purchase another 2015 or 2016 Subaru Outback or Legacy. Consumers previously deceived may seek injunctive relief for the deceptive practice, since the threat of harm continues to exist unless a manufacturer or seller is enjoined from the same alleged fraudulent conduct in the future. *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017). However, plaintiffs must "adequately allege that [they] fac[e] an imminent or actual threat of future harm" to themselves, not just to putative class members. *Id.*at 1116. Here, plaintiffs contend that they have an interest in Subaru providing non-defective replacements for their windshields in their current vehicles, and an extension of their vehicle warranties to cover those replacement windshields. As plaintiffs allege they continue to own their vehicles, these allegations are sufficient to allege imminent future harm.

Subaru next argues that plaintiffs cannot maintain a suit for money damages under the CLRA for two reasons: (1) Subaru already made a timely and appropriate correction offer long before this action by implementing the extended warranty program; and (2) plaintiff Mann never provided the pre-suit notification required under the CLRA. California Civil Code section 1782(a) requires that, at least thirty days prior to commencing an action for damages under the CLRA, a consumer must (1) notify the person alleged to have committed the violations, and (2) demand that the person "correct, repair, replace, or otherwise rectify the goods or services" in question. Cal. Civ.Code § 1782(a). No award of damages under the CLRA may be given if the alleged violator "makes an appropriate correction, repair or replacement or other remedy." Cal. Civ. Code § 1784.

Subaru's arguments for dismissing CLRA money damages claims fail. First, Subaru's arguments again disregard the allegations here: that the extended warranty program did not cover or acknowledge the *scope* of the Windshield Defect plaintiffs allege. Because plaintiffs contest whether Subaru's program actually cured the defect of which they complain, the extended warranty program does not moot their claim. *See In re Toyota Motor Corp. Hybrid Brake Mktg.*,

10

*Sales, Practices & Prod. Liab. Litig.*, 890 F. Supp. 2d 1210, 1218 (C.D. Cal. 2011) (section 1782(b) does not preclude claim where "[p]laintiffs fundamentally contest the issue of whether the recall cured the braking defect"). Second, Luong's notification is sufficient for all putative class members, including Mann. When one named plaintiff provides written notice to a defendant on behalf of the plaintiff and similarly situated consumers, that notice satisfies section 1782 for all class members. *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1317 (C.D. Cal. 2013); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.,* 754 F.Supp.2d 1145, 1174–75 (C.D.Cal.2010) (holding that one or more named plaintiffs may satisfy the notice requirements of § 1782 on behalf of the entire putative class). Luong's letter here satisfies section 1782's requirements for herself, plaintiff Mann, and the alleged class. (Kiser Decl., Exh. D, Dkt. No. 28-5 [Luong CLRA letter].)

Next, Subaru contends that plaintiffs' CLRA and UCL claims are subject to dismissal to the extent they seek equitable relief where they have an adequate remedy at law. Business & Professions Code section 17205 expressly states that the remedies provided for a UCL violation are "cumulative to each other and to the remedies or penalties available under all other laws of this state." *See also Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 566, 950 P.2d 1086, 1094 (1998) ("the Legislature has clearly stated its intent that the remedies and penalties under the UCL be cumulative to other remedies and penalties"); *State v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 1303 (2005) ("the fact that there are alternative remedies under a specific statute does not preclude a UCL remedy, unless the statute itself provides that the remedy is to be exclusive."). The CLRA similarly provides "[t]he remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law." Cal. Civ. Code §1752. The availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct. *See Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017) ("plaintiffs may seek injunctive and/or restitutionary equitable relief separate and apart from the same underlying claims") (*citing Cortez v Purolator Air*

*Filtration*, 23 Cal.4th 163, 179 (2000)).[6] The motion to dismiss plaintiff's UCL claim and claims for equitable relief under the CLRA due to the adequacy of the legal remedies plaintiffs allege is denied.[7]

### D. Implied Warranty Claim

Plaintiffs allege their third claim for breach of implied warranty on two grounds: California Commercial Code section 2314 and Civil Code section 1792, the Song-Beverly Consumer Warranty Act. Subaru moves to dismiss plaintiffs' implied warranty claim to the extent it is brought pursuant to California Commercial Code section 2314. Subaru contends that section 2314 requires plaintiffs to allege contractual privity with Subaru, which they have not done. Thus, plaintiffs, who purchased their vehicles from dealerships and are not in contractual privity with "manufacture/distributor" Subaru, should have their implied warranty claim under Commercial Code section 2314 dismissed.

---

[6] The Court recognizes that there is a split of authority in the California district courts on the question of whether plaintiffs should be barred from pleading claims for equitable relief under the UCL and CLRA if they have alleged a claim that would provide an adequate remedy at law. *See Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018) (denying dismissal); *Adkins v. Comcast Corp.*, No. 16-CV-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) ("A few federal courts seem to have decided that claims for equitable relief should be dismissed at the pleading stage if the plaintiff manages to state a claim for relief that carries a remedy at law . . . . But this Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleadings stage."); *Huu Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) (granting dismissal because plaintiff had adequate remedy at law); *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1204 (N.D. Cal. 2017) (same); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) (same). The Court finds those decisions allowing claims for equitable relief to proceed as an alternative remedy, at the pleading stage, to be more persuasive, based upon the broad remedial purposes of the California consumer protection statutes.

[7] Subaru's citation to the Ninth Circuit's decisions in *Schroeder* and *Mort* are unavailing. In *Schroeder*, the court affirmed summary judgment holding that, as a matter of federal common law, an equitable remedy was not available for violation of a federal housing loan statute. *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). The Ninth Circuit in *Mort* decided that the district court had improperly declined equitable relief in favor of requiring the plaintiffs to pursue their legal remedies first. *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996). Neither case concerns a question of pleading alternative or additional equitable remedies under the CLRA and UCL.

The Ninth Circuit has held that under the California Commercial Code section 2314, a plaintiff asserting breach of warranty claims must stand in contractual privity with the defendant and that "[a]n end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023–24 (9th Cir. 2008). At the same time, the Ninth Circuit in *Clemens* acknowledged that California law recognizes some exceptions to the privity rule, such as where the consumer relies on manufacturer labels or advertisements, particular types of products (not including automobiles), or where the end user is an employee of the purchaser. *Id*. Subsequent district court decisions are divided as to whether a third-party beneficiary exception to the privity rule exists. *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011) (with some courts rejecting the exception based upon *Clemens*); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014) ("[i]n light of *Gilbert* and the lack of a clear holding to the contrary in *Clemens,* the [c]ourt concludes that the third-party beneficiary exception remains viable under California law."); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) ("the Court concludes that where a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the implied warranty's breach").

For their part, plaintiffs cite authorities supporting a third-party beneficiary exception to the privity rule. However, their opposition to the motion does not squarely state whether they consider themselves to be third party beneficiaries or direct privity with respect to the contract from which the implied warranty claim arises. In the FAC, they allege that Subaru was "all relevant times the manufacturer, distributor, *warrantor, and/or seller* of the Class Vehicles." (FAC ¶ 86, emphasis supplied.) They allege that Subaru "provided plaintiffs with an implied warranty" that their vehicles were merchantable and fit for the ordinary purposes for which they were sold. (*Id.* ¶ 87.) They allege that Subaru "is responsible for the design, manufacture, distribution, marketing, sale and lease of" the vehicles at issue. (*Id*. ¶ 18.)

Thus, the FAC can be read to allege direct privity. To the extent that the allegations would only support a third-party beneficiary relationship, the more well-reasoned authorities in *In Re*

*MyFord Touch* and *In re Toyota* support an exception to the privity rule here. The Court therefore denies the motion to dismiss the implied warranty to the extent it relies on Commercial Code section 2314.[8]

### E. Express Warranty Claim

Subaru next contends that plaintiffs' express warranty claims under Commercial Code section 2313 (fourth claim) and the MMWA (fifth claim) require notice and an opportunity to cure a failure to comply with a warranty before the consumer may bring an action for breach of warranty. *See* Cal. Com. Code § 2607(3)(A) ("The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy."); 15 U.S.C. § 2310(e) ("No action . . . may be brought . . . for failure to comply with any obligation under any written or implied warranty or service contract . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply."). In this case, Subaru contends neither plaintiff provided notice as required.

Plaintiffs argue that Luong sent a pre-litigation demand letter which notified Subaru of both the CLRA violations and the breach of express warranty. (Kiser Decl. Exh D.) The letter specifically stated that it sought corrective action under the CLRA, the MMWA, and California Commercial Code section 2607(3)(A) on behalf of Luong and all persons "residing the United States who purchased or leased . . . any 2015 or 2016 Subaru Outback or Legacy vehicles." (*Id.*) The letter states that Luong was denied warranty coverage. *Id.* ("Ms. Luong took her vehicle to Rancho Grande Subaru in San Luis Obispo, California and was refused warranty coverage.") More specifically, it states that "[t]o date, Subaru has failed to disclose and actively concealed the true nature of the Windshield Defect … [and] failed to honor valid warranty claims and/or merely replaced one defective windshield with another." (*Id.*)

Based on the record presently before the Court, Luong's letter is sufficient to satisfy the

---

[8] Subaru argued that plaintiffs' implied warranty claim under the MMWA failed for the same reasons the California implied warranty claims should be dismissed. Because the Court denies the motion to dismiss the California implied warranty claim, it likewise denies the motion to dismiss the MMWA claim.

14

notice requirements for the express warranty claims. Unlike in *Oddo*, Subaru has not identified any way in which the letter here is deficient under the terms of the express warranty. *Oddo v. Arcoaire Air Conditioning & Heating*, No. 815CV01985CASEX, 2017 WL 372975, at *8 (C.D. Cal. Jan. 24, 2017) (notice requirements, as set forth by statute and supplemented by the particular warranties, were not met; general request that the defendant replace the "defective HVAC systems" was not sufficient notice where warranties require a specific request for repair or replacement of a product). Contrary to Subaru's argument, *Oddo* does not stand for the proposition that the required warranty notice, if sufficiently specific, cannot be made in the same document as the CLRA notice.

### F. Jurisdictional Requirements for MMWA Claims

In addition to their arguments above, Subaru offers two additional arguments as to why the Court has no jurisdiction over plaintiffs' claims under the MMWA. First, Subaru argues that plaintiffs fail to identify 100 named plaintiffs, as required by 15 U.S.C. section 2310(d)(3). Second, Subaru argues that plaintiffs have failed to allege damages of at least $50,000 (exclusive of attorneys' fees, interest and costs). *See* 15 U.S.C. § 2310(d) ("a consumer who is damaged by the failure of a supplier[or] warrantor ... to comply with any obligation under this chapter [15 U.S.C. §§ 2301 *et seq.*], or under a written warranty [or] implied warranty" to sue in United States district court provided that "the amount in controversy is [not] less than the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit."); *Keegan*, 838 F. Supp. 2d at 957-58. Moreover, Subaru contends they cannot plausibly do so because the cost to repair or replace a windshield, or even replace the vehicle, is far below the $50,000 jurisdictional minimum.

Plaintiffs respond that, although the MMWA does have these jurisdictional requirements, if there is an alternative basis for federal jurisdiction over the action, such as the Class Action Fairness Act (28 U.S.C. §§ 1332(d), 1453, "CAFA"), then MMWA claims may be heard in federal court without meeting the statute's jurisdictional requirements. *Wolph v. Acer America Corp.*, 2009 WL 2969467, *3 (N.D. Cal. Sept. 14, 2009); *Brothers v. Hewlett–Packard Co.*, 2007 WL 485979, *8 (N.D. Cal. Feb. 12, 2007). Here, plaintiffs have alleged jurisdiction of this Court

under CAFA. (FAC ¶ 21.)

The Court agrees that this alleged basis for jurisdiction is sufficient, and the MMWA requirements need not be met to establish jurisdiction over the FAC. Dismissal of the MMWA claims on this basis is not supported.

## IV. CONCLUSION

Based upon the foregoing, the Motion to Dismiss the FAC is **DENIED**.[9]

This terminates Docket Nos. 28 and 42.

**IT IS SO ORDERED**.

Dated: May 2, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[9] Subaru argues, without citing any authority, that Mann's claim should be dismissed for spoliation because he replaced the cracked windshield that Subaru would not replace. Likewise, Subaru also argues that the Court should "deny" plaintiffs' "demand" for universal tolling as to putative class members because it "notified all affected owners of the Condition two years ago." (Motion at 25:4-16.) The Court **DENIES** the motion on these grounds as utterly lacking in legal support. These are, at best, factual issues that cannot be resolved in a motion to dismiss the pleading.